IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| Cynthia P.,<br>    Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br>    Defendant. | Case No. 4:17-cv-04328-JEH |

**Order**

Now before the Court is the Plaintiff Cynthia P.'s Motion for Summary Judgment (Doc. 12) and the Commissioner's Motion for Summary Affirmance (Doc. 14).[1]  For the reasons stated herein, the Court DENIES the Plaintiff's Motion for Summary Judgment and GRANTS the Commissioner's Motion for Summary Affirmance.[2]

**I**

Cynthia P. filed her applications for disability insurance benefits (DIB) and supplemental security income (SSI) on April 7, 2014.  She alleged disability beginning on April 1, 2012, and she later amended her alleged onset date to December 7, 2014, her 50th birthday.  Her claims were denied on September 26, 2014 and were denied upon reconsideration on April 27, 2015.  Cynthia filed a request for hearing concerning her applications on June 8, 2015.  A hearing was held before the Honorable Susan F. Zapf (ALJ) on October 3, 2016.  At that hearing,

---

[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge.  (Docs. 9, 10).
[2] References to the pages within the Administrative Record will be identified by AR [page number].  The Administrative Record appears as (Doc. 6) on the docket.

Cynthia was represented by an attorney and a Vocational Expert (VE) testified. Following the hearing, Cynthia's claims were denied on March 15, 2017. Her request for review by the Appeals Council was denied on October 27, 2017, making the ALJ's Decision the final decision of the Commissioner. Cynthia filed the instant civil action seeking review of the ALJ's Decision on December 20, 2017.

II

In May 2014, Cynthia alleged on Form SSA-3368 that fibromyalgia, PTSD, spurs in both heals, a degenerative disc in her back, diabetes, hypothyroidism, asthma, a hiatal hernia, arthritis, and sciatica limited her ability to work. AR 267.

At the October 2016 hearing, the ALJ asked Cynthia questions to "get some idea of [Cynthia's] current functional limitations." AR 37. The ALJ first asked her about her past work and how she performed that work. At the time of the hearing, Cynthia testified that she believed she could not work at all at that time because of her back and knees. She saw a doctor at a pain clinic to treat her back and knees and she was on a few medications. She also had diabetes and her primary care doctor believed Cynthia had neuropathy because of it. Cynthia further testified that she visited a counselor due to posttraumatic stress disorder and she suffered from anxiety.

Cynthia explained that it was "sometimes" tough to get through a day at work because of her back and knee pain. AR 49. She had to get up, move around, and stretch to give her back and knees a break. She could sit about a half an hour at a time before she had to get up and move around. While the longest amount of time she then-worked was seven hours in a day, Cynthia further stated that would cause her such pain that she would miss church on Sundays. Cynthia would then have to rest until Tuesday of the following week when she returned to work.

Upon questioning by her attorney, Cynthia explained that she had two 15-minute breaks and a 30-minute lunch at her current job. She tried to get up and

move around as much as possible while at work. She repeated that she could sit for a half an hour at one time, needed to get up and walk around for five to 10 minutes, and could stand about a half an hour at one time. Thus, Cynthia thought she could be on her feet walking and standing four hours in one day. Cynthia testified she was unable to work on a full-time basis because, "I would be in so much pain every day leaving, having to put in a whole eight-hour shift." AR 61.

The ALJ then questioned the VE. The VE first obtained testimony from Cynthia to clarify the latter's past work. The ALJ then asked the VE:

> I would like you to consider a hypothetical claimant of the same age, education, and having the same past work as this claimant; limited to a range of light work with standing and walking limited to four hours; occasional pushing and pulling with the lower extremities; occasional climbing ramps and stairs; no climbing ladders, ropes, or scaffolds; frequent balancing, stooping, kneeling, crouch – Oops, I'm sorry. – frequent balancing; frequent stooping; occasional kneeling, crouching, and crawling; avoid concentrated exposure to extremes in cold, heat, humidity, and vibrations; avoid concentrated exposure to fumes, odors, dust, gas, poor ventilation, and hazards; limited to simple, routine, repetitive tasks that can be easily resumed if the claimant has momentary lapses in concentration and attention. Is there any past work she could perform based on that residual functional capacity?

AR 65-66. The VE responded in the negative. The ALJ next asked the VE if there were other light jobs that could be performed with only four hours of standing and walking in addition to the limitations cited in the hypothetical. The VE identified the jobs of office helper, router, and marker. There were "around" 4,900 office helper jobs in Illinois and 44,700 in the U.S. The number of router and marker jobs were each reduced to one-half; 1,347 router jobs in Illinois and 36,335 in the U.S., and 4,544 marker jobs in Illinois and 105,254 in the U.S. AR 66-67.

If the hypothetical individual was further limited to frequent, but not constant, bilateral handling, the VE testified the individual could still perform the

jobs of office helper, router, or marker. All three jobs could still be performed by the hypothetical individual who could only sit for 30 minutes and then stand up for two minutes. The VE explained that if the individual needed to stand more often than every 30 minutes, that would be disruptive to his/her pace and production. The VE also explained that employers would not tolerate it if the hypothetical individual could only stand and walk four hours in an eight-hour day who had to have the option of being able to change between sitting and standing at will.

Cynthia's attorney then asked the VE if employers would tolerate the hypothetical individual not simply standing for two minutes every 30 minutes but actually walking around for five minutes every half hour. The VE responded "that would not be tolerated." AR 68. The VE responded to the attorney that the former's understanding of the exertion required by the Commissioner's regulations of light work in terms of standing and walking in an eight-hour day was six to eight hours. The ALJ followed up with the question whether there were light jobs per the Dictionary of Occupational Titles (DOT) that required 20 pounds of lifting but limited standing and walking to under six hours a day. The VE responded that the jobs she identified were such jobs. The colloquy continued:

> Q. Okay. Okay. But they're light jobs because they have to lift up to 20 pounds. Is that correct?
> A. Well, because it's more –
> Q. Or more than 10 [pounds]?
> A. More than – well, more than 10, right.
> Q. Okay.
> A. And, also, you know, being on your feet more than two hours.

AR 69. The VE explained her testimony was consistent with the DOT and her own professional experience; the DOT did not address "sit-stand." *Id.*

# III

At the outset of her Decision, the ALJ recognized that Cynthia amended her alleged onset date to December 7, 2014 (Cynthia's 50th birthday).[3] The ALJ determined Cynthia had the following severe impairments: degenerative disc disease; degenerative joint disease; diabetes; fibromyalgia; asthma; obesity; and affective disorder and anxiety disorder. AR 16. At Step Four, the ALJ made the following residual functional capacity (RFC) finding:

> [C]laimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that she is limited to standing and walking four hours, occasional push/pull with the lower extremities, occasional climbing ramps and stairs, no climbing ladders, ropes or scaffolds, frequent balancing, stooping, occasional kneeling, crouching and crawling. She must avoid concentrated exposure to extreme cold, heat, humidity, vibration, fumes, odors, dust, gases, poor ventilation and hazards. She is limited to simple, routine, repetitive tasks that can be easily resumed if the claimant has momentary lapses in concentration and attention.

AR 19. The ALJ recognized that Cynthia was an individual closely approaching advanced age (50 years old)[4] on her alleged disability onset date, as provided in 20 C.F.R. §§ 404.1563 and 416.963.

At Step Five, the ALJ concluded after considering Cynthia's age, education, work experience, and RFC, that "there are jobs that exist in significant numbers in the national economy that the claimant can perform[.]" AR 24. The ALJ initially acknowledged that she was required to consider Cynthia's RFC, age, education,

---

[3] As the Commissioner notes in her Motion for Summary Affirmance, the ALJ made a typographical error when she indicated December 6 as Cynthia's birthdate. *See* footnote 4, *infra*.

[4] Page 10 of the Decision (AR 23) provides Cynthia's age as 49 on the alleged disability onset date. The Commissioner points out in her Motion for Summary Affirmance that the ALJ made a typographical error with regard to Cynthia's birthdate in her Decision. "However, the ALJ acknowledged the key characteristic of the amended onset date: that it was Plaintiff's 50th birthday." Dft's MSA (Doc. 15 at pg. 4 n.2). Indeed, the ALJ erroneously indicated Cynthia was 49 years old on the alleged onset date but correctly identified her as an individual closely approaching advanced age (one aged 50-54). *See* 20 C.F.R. § 404.1563(d).

and work experience in conjunction with the Medical-Vocational Guidelines (commonly referred to as "the Grids") to determine whether Cynthia could make a successful adjustment to other work. AR 24. She also acknowledged that if Cynthia had the RFC to perform the full range of light work, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.14. The ALJ continued:

> However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled light occupational base, the [ALJ] asked the [VE] whether jobs exist in the national economy for an individual with [Cynthia's] age, education, work experience, and [RFC].

AR 24. The ALJ set forth the VE's answer that such an individual would be able to perform the requirements of the following "representative"[5] occupations: office helper (4,900 jobs in Illinois and 44,700 nationally); router (1,347 jobs in Illinois and 36,365 nationally); and marker (4,544 jobs in Illinois and 105,234 nationally).[6] *Id*. The ALJ concluded, based upon the VE's testimony, that Cynthia was capable of making a successful adjustment to other work that existed in significant numbers in the national economy given Cynthia's age, education, work experience, and RFC, and a finding of "not disabled" was therefore appropriate "under the framework of the above-cited rule." *Id*.

---

[5] Cynthia takes issue with the ALJ's use of the word "representative" because the VE did not testify the identified jobs were such. This discrepancy does not affect the Court's analysis and will be addressed no further.
[6] There are some discrepancies between the job numbers that appear in the hearing transcript and the ALJ's written Decision. Because the parties do not make an issue of it, the Court does not either.

# IV

## A

Cynthia makes just one argument: the Commissioner has not sustained her burden at Step Five of the disability analysis of proving that other jobs exist in significant numbers.

The Court's function on review is not to try the case de novo or to supplant the ALJ's findings with the Court's own assessment of the evidence. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Pugh v. Bowen*, 870 F.2d 1271 (7th Cir. 1989). Indeed, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Although great deference is afforded to the determination made by the ALJ, the Court does not "merely rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). The Court's function is to determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971), *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

In order to qualify for disability insurance benefits, an individual must show that his inability to work is medical in nature and that he is totally disabled. Economic conditions, personal factors, financial considerations, and attitudes of the employer are irrelevant in determining whether a plaintiff is eligible for disability. *See* 20 C.F.R. § 404.1566; 20 C.F.R. § 416.966.[7] The establishment of disability under the Act is a two-step process.

---

[7] The standards for establishing a disability in order to receive DIB and SSI are materially the same. *Compare* 20 C.F.R. § 404.1501 *et seq.* (DIB) *with* 20 C.F.R. § 416.901 *et seq.* (SSI). Thus, the Court may at times only cite to the DIB regulations.

First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. *McNeil v. Califano*, 614 F.2d 142, 143 (7th Cir. 1980). The factual determination is made by using a five-step test. *See* 20 C.F.R. § 404.1520. In the following order, the ALJ must evaluate whether the claimant:

1) currently performs or, during the relevant time period, did perform any substantial gainful activity;

2) suffers from an impairment that is severe or whether a combination of her impairments is severe;

3) suffers from an impairment which meets or equals any impairment listed in the appendix and which meets the duration requirement;

4) is unable to perform her past relevant work which includes an assessment of the claimant's residual functional capacity; and

5) is unable to perform any other work existing in significant numbers in the national economy.

*Id*. An affirmative answer at any step leads either to the next step of the test, or at steps 3 and 5, to a finding that the plaintiff is disabled. A negative answer at any point, other than at step 3, stops the inquiry and leads to a determination that the plaintiff is not disabled. *Garfield v. Schweiker*, 732 F.2d 605 (7th Cir. 1984).

The plaintiff has the burdens of production and persuasion on steps 1 through 4. However, once the plaintiff shows an inability to perform past work, the burden shifts to the Commissioner to show ability to engage in some other

type of substantial gainful employment. *Tom v. Heckler*, 779 F.2d 1250 (7th Cir. 1985); *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984).

**B**

Cynthia initially points out that, "At age 50 the Commissioner's regulations direct a finding of disabled for a claimant who is limited to unskilled work and has the physical capacity to perform the full range of sedentary work." Plf's MSJ (Doc. 13 at pg. 6). She argues the "critical issue" in this case is whether or not the ALJ elicited enough information for the VE to determine the extent of the remaining occupational base which "necessarily includes" jobs in both the sedentary and light work bases. Plf's MSJ (Doc. 13 at pg. 12). Cynthia further points out:

> In situations where the rules direct different conclusions, and the individual's exertional limitations are somewhere in the middle [between sedentary and light work], vocational testimony is advisable to determine the sufficiency of the remaining occupational base to support a conclusion as to disability.

*Id*. at pgs. 11-12, *citing* SSR 83-12, at *2.[8] She still further points out, "Where nonexertional limitations might substantially reduce the range of work an individual can perform, the grids do not apply and the ALJ must consult a vocational expert." (Doc. 13 at pg. 13). It appears that, according to Cynthia, the crux of the issue is this:

> [I]t is clear that if the remaining occupational base consists of the full, uneroded sedentary work base plus the additional light jobs testified to by the [VE] [the ALJ's] finding of not disabled would be supported by substantial evidence and unaffected by error. [The ALJ], however, did not elicit any testimony about how [Cynthia's] nonexertional

---

[8] TITLES II AND XVI: CAPABILITY TO DO OTHER WORK – THE MEDICAL VOCATIONAL RULES AS A FRAMEWORK FOR EVALUATING EXERTIONAL LIMITATIONS WITHIN A RANGE OF WORK OR BETWEEN RANGES OF WORK.

>impairments erode the number of jobs available in the unskilled sedentary work base.

*Id*.

The Commissioner contends Cynthia argues from the mistaken premise that the ALJ had to identify the total number of light work jobs in the economy that Cynthia could perform and subtract the total number of sedentary jobs (which according to her no longer existed for her) to determine whether she could perform a significant number of jobs in the national economy. The Commissioner states simply, such an argument "profoundly misunderstands" the structure of the Grids and the Step Five process. Dft's MSA (Doc. 15 at pg. 8). The Commissioner emphasizes that the rules contained in the Grids are to be used as a *framework* for the consideration of how much an individual's work capacity is diminished by additional limitations where the individual's vocational profile does not correspond directly to the criteria of any listed rule.

Cynthia's argument fails. As the Commissioner notes, Cynthia cites no support establishing the procedure she argues the ALJ failed to follow in this case. To the contrary, the authority Cynthia herself cites – SSR 83-12 – was followed by the ALJ. Cynthia's ability to perform all or substantially all of the requirements of light exertional level work had been impeded by additional limitations. Her exertional capacity did not fall neatly into just one rule so that the ALJ had a clear determination of "disabled" versus "not disabled." The ALJ therefore correctly asked the VE a variety of questions to determine whether there was other substantial gainful work in the economy that Cynthia could perform given her age, education, past work, and RFC. The VE responded with three different jobs which she later made clear during the hearing were at the light level of exertion per the Commissioner's regulations. Cynthia does not argue and the relevant authority does not indicate the number of the jobs identified were not "significant

numbers in the national economy." *See Liskowitz v. Astrue*, 559 F.3d 736, 743 (7th Cir. 2009) ("As few as 174 jobs has been held to be significant . . . and it appears to be well-established that 1,000 jobs is a significant number") (citing cases). Nor did her attorney at the time of the hearing make any objection to or otherwise challenge the VE's testimony as unreliable with regard to the jobs the latter identified as ones Cynthia could perform. *See Overman v. Astrue*, 546 F.3d 456, 464 (7th Cir. 2008) (explaining that a VE's testimony can satisfy the Commissioner's Step Five burden of establishing that the claimant can perform other work that exists in significant numbers in the national economy only where the VE's testimony is reliable). The ALJ's Step Five finding is supported by substantial evidence and she made no legal error in reaching that finding. *See Delgado*, 782 F.2d at 82.

The Court finds it necessary to address one final point. In her Motion for Summary Judgment, Cynthia contends that if the three jobs the VE identified she could perform plus the remaining sedentary base are equal to or fewer than an unimpaired sedentary work base, Cynthia should have been found disabled. She goes so far as to argue that she was denied equal protection of the law due to the ALJ's alleged failure to determine whether the total number of jobs available in both the sedentary and light work bases was less than or equal to the full, uneroded sedentary work base. On some theoretical level, the Court understands Cynthia's argument in this appeal. However, her equal protection argument is not sufficiently developed for any meaningful review of it. More significantly, it is not the Court's place to read into the statutes, regulations, and rulings pertaining to Social Security disability decisions requirements that do not actually appear in the

text of those authorities.[9] Certainly, SSR 83-12 makes clear that an ALJ must inquire into how a claimant's impairments erode the claimant's occupational base, as discussed above. Cynthia cites to *Haynes v. Barnhart* as support for her argument that the ALJ erroneously failed to elicit testimony about how Cynthia's nonexertional limitations eroded the number of unskilled sedentary jobs. In *Haynes*, the Seventh Circuit found:

> The regulations and abundant caselaw clearly indicate that in [situations where a claimant suffers from a combination of exertional and nonexertional limitations] it is appropriate to consult with a vocational expert, which is precisely what the ALJ did.

416 F.3d 621, 629 (7th Cir. 2005). The exact same can be said in this case. Nowhere in that case did the Seventh Circuit discuss the necessity of the ALJ to engage in the numerical calculation Cynthia argues was necessary here. The ALJ's Decision is affirmed.

## V

For the foregoing reasons, the Plaintiff's Motion for Summary Judgment (Doc. 12) is DENIED and the Defendant's Motion for Summary Affirmance (Doc. 14) is GRANTED. The Clerk of Court is directed to enter judgment as follows: "Judgment is entered in favor of the Defendant, Commissioner of Social Security, and against the Plaintiff, Cynthia P."

This matter is now terminated.

*It is so ordered.*

Entered on February 1, 2019.

s/Jonathan E. Hawley
U.S. MAGISTRATE JUDGE

---

[9] The Court recognizes that SSRs are interpretive rules intended to offer guidance to agency adjudicators and do not have the force of law or properly promulgated notice and comment regulations. *Lauer v. Apfel*, 169 F.3d 489, 492 (7th Cir. 1999). Still, "the agency makes SSRs binding on all components of the Social Security Administration." *Id.*, *citing* 20 C.F.R. § 402.35(b)(1).